Your Honor, the first thing I would like to address is the 28-J letter that I filed citing Garcia v. Merced, in which the court said, Judge Trott, that jailhouse informants should be presumed to be looking for benefits. The government responded that, in fact, that case helps their position, because the court also said we should know that they're also notoriously unreliable. That case does not help the government. That case is about probable cause to seek a warrant. That case is about what prosecutors, cops, judges, and defense attorneys all know. There's nothing in that case about what juries are supposed to know. That's what this case is all about, hoodwinking the jury. The government says that there was a cautionary instruction given in that case, and therefore, we don't have to worry about the undisclosed Rule 35 motions that were filed on behalf of all three of these informants. Justice Breyer Help me a minute. I'm sympathetic with your attitude about — Justice O'Connor I'm sorry, Your Honor. I'm having trouble hearing you. Justice Breyer I'm sympathetic about some of your comments about jailhouse informants, but don't we really have to find the district judge just made errors in his factual findings in order to prevail? Because he's found there were no such promises made, and so even if there were, it would be in a different circumstance. But the judge specifically found there weren't, so we'd have to find — we'd have to reverse that finding. Justice O'Connor I'm sorry, Your Honor. I'm having trouble hearing you. My hearing is bad. Justice Breyer Well, and I've got an old Southern accent, too. Justice O'Connor No, I'm sorry. Justice Breyer What I'm saying is that it looked to me like the district judge held a hearing and concluded there were no promises made. Justice O'Connor That's correct. Justice Breyer So for us to reverse would require us to find that the finding was wrong. Justice O'Connor That's correct. And we're talking about — Justice Breyer How do we do that? We don't weigh the evidence. Your case tells us they're notoriously unreliable, and maybe there should be a jury instruction someday that somehow accomplishes that. But his factual finding, how would we disturb that? Justice O'Connor Well, the district court judge in the 2255 motion, he made some findings without holding an evidentiary hearing. You can't make a finding with an evident ability without an evidentiary hearing. Justice O'Connor How is it clearly erroneous for the district court to conclude based on the sworn statements of the AUSA, who purportedly gave the deal, the FBI agent who was involved put in a sworn declaration? It was the same district judge who heard the testimony at trial, right? And he made a factual finding that no promises were made. So what in the record demonstrates that that finding was clearly erroneous? Justice Breyer First, Your Honor, we do have the statements, the tape-recorded phone calls of Oscar Johnson repeatedly saying over the telephone that, in fact, he had been explicitly promised that as soon as he testified, he would be going home. It makes no difference that he was under oath or not under oath on the telephone. We have the fact that Oscar, excuse me, Ralph Rocha was acquitted. This judge presided over the trial and saw that Oscar Johnson's tape-recorded phone call was quite dramatic. It showed that not only wrote that Oscar Johnson was lying under oath on the witness stand, but that the prosecutor did not look like he had much credibility either. Now, we have just the mere fact that the prosecutor submits a declaration under oath does not allow the Court, under the well-settled case law of this Court, that you can make credibility findings without an evidentiary hearing. And we did not have one in this case. Now, there is more information. Why was that clearly erroneous? Because what did happen? We have Oscar Johnson boasting repeatedly, I'm going home as soon as I testify. They're going to go to the judge, and I'll be out of here. And that was like five years earlier than he was supposed to get out. He not only looked like a liar, the jury acquitted Mr. Johnson, and he was acquitted. And what did the court do? They did all of this. It went and filed a Rule 35 motion for Mr. Johnson, despite all of that, so that he could get out. Now, why did they do that if it wasn't a promise? Why did they do that? If the Court wants to make a finding that it wasn't a promise, they have to hold an evidentiary. Did the judge in this case have an opportunity to make a credibility observation? Because this witness testified at Mr. Rocha's trial, right, and the same judge was present. He was cross-examined extensively on the recordings, and he gave an explanation for that. So the judge had an opportunity to observe his demeanor. The problem is, is that Mr. Johnson did not testify. He was not impeached before Mr. Rodriguez's jury. And the fact is that we also have a jury that acquitted Mr. Rocha that clearly did not believe Oscar Johnson, that did not believe the government's position, and that we have under Earp v. Arnosky, all of these cases from the Ninth Circuit, that in order to make credibility findings, you have to hold an evidentiary hearing. And all of that was before Mr. Rocha, and not before Oscar Johnson. And that if we say that the government – all the government has to do when they're caught doing what they did is to submit a declaration and avoid being cross-examined about all of this, to avoid having to turn over discovery. That's – that is a – well, then they should get on the witness stand and be cross-examined about their declaration under penalty of perjury. Because according to Oscar Johnson, and according to what they did, they did file the Rule 35 motion, and he did get out early. And that impeaches the government's declaration. All three of these informants got – got Rule 35 motions, despite the fact that the government repeatedly said they weren't getting anything. And as far as the cautionary instruction that the government says saves the day, what about that cautionary instruction that was given in Mr. Rodriguez's case? The government objected to giving that cautionary instruction. He said – Mr. Umphoffer said, I don't know, Your Honor, I'm worried about the favored treatment angle, though. I'm not sure that there's evidence. And the defense attorney said, well, there was evidence that they were given protection for their safety, a couple of hundred bucks and a hamburger. There was no evidence before Mr. Rodriguez's jury that the jury should understand that these informants, despite the fact that they repeatedly denied that they were expecting leniency, that in fact that they would all have Rule 35 motions filed so that they could get out early. And I also want to say about the judge's findings of fact, again, without an evidentiary hearing, there is no case in this Court that says that, you know, a declaration from a prosecutor is all that we need to make a finding, in fact, of the government when you have all of this other evidence, the tape-recorded phone calls repeatedly. But there's also a case which this Court said in order to overturn findings, and that's always been after an evidentiary hearing, that such a finding can be overturned if it reeks with the force of a five-week-old unrefrigerated dead fish. And a finding that the government did not make any promises, tacit or otherwise, and certainly, according to Oscar Johnson, explicit findings, that reeks. And Mr. Johnson did not have an evidentiary hearing to which he was entitled. The evidence is overwhelming that the government hoodwinked the jury in this case. Looking at your brief, and I may be missing something, but it looks like I see a bullet point that the district court made credibility findings in favor of the government without holding an evidentiary hearing, but I don't see it discussed. What? I'm sorry? I don't see it discussed, your contention that perhaps this should be reversed because there was no evidentiary hearing. I don't see that as something that you've asked us to do. You've asked us to make substantive rulings but not find that that was an abuse of discretion. Well, Your Honor, I do say in my summary of my argument that the Court made these findings without an evidentiary hearing. I do discuss that. And that's sort of implicit in the request to be reversed. The Court, I believe, can grant relief without an evidentiary hearing, but it cannot deny relief without an evidentiary hearing. And what contrary credibility, it seems to me what you're saying is that what should have been done, it should have been because there were credibility issues, there should have been a hearing. I think that's what you're saying. What credibility issues would you say would have to have been developed other than the testimony of the prisoner who testified, who was recorded, as well as the U.S. attorneys? Just what do you have in mind? We heard the testimony of the prisoner. You're talking about Mr. Wiseman? Yes. The actual victim in this case? No. Who would you think he had to have heard from at an evidentiary hearing that he couldn't handle by affidavit? Well, we have the fact that Oscar Johnson would have to come in and testify at an evidentiary hearing as to exactly what the explicit promises that were made to him. We need to have the government turn over all tape recordings of telephone calls or conversations, recorded audio or written between the informants and cross-examined about why Oscar Johnson was lying on those tape recordings and what Mr. Umhofer said. We don't have all the discovery. We don't have any of the letters that were written to the Southern District of California why they were seeking the Rule 35 motion. They haven't turned over the Rule 35 motion here. They haven't turned over the Rule 30. I do have now the Rule 35 that was filed on Oscar, excuse me, Ryan Davis. We don't have the Rule 35 motion that was filed on behalf of Wiseman. And all three of these informants, including Mr. Wiseman, repeatedly testified when they were asked that they were not expecting a time cut. And for a jury to think that, okay, these guys are going to get on the witness stand and they're going to lie because they got out of jail. And this jury was led to believe, misled to believe, that they were not getting out. And that, in fact, they did. And if the government, this court has lots of cases repeatedly about winking and nodding with informants, about tacit understandings that need to be disclosed. Suvac v. Hardison, Campbell v. Reed, Wilhurt v. Vasquez. The big deal, if they didn't make any promises, even after being caught with Oscar Johnson's tape recording, why didn't they disclose post-conviction? Oh, by the way, we filed these Rule 35 motions and these guys are already out of jail, long before they said they were getting out of jail. The United States Supreme Court in Imler v. Packman says that the government is required to disclose information that casts doubt on the correctness of a conviction after. And when they use informants under Banks v. Dreske, they have to set the record straight. They haven't done that. They were caught. That's the issue here. I see that I, oh, is there a question? What did the jury know about these witnesses? What did the jury know? Yeah. The jury knew that they were prisoners, that they had lengthy convictions, that, and that they, you know, one of them was a drug addict. Oscar Johnson was impeached with the fact that he said that he never saw a knife and then he gets on the witness stand and he said that he saw a knife, but the jury didn't know what their motivation was. That he saw what? That he saw Mr. Rodriguez with a knife. I got my hearing aids on. See? Okay. That was supposed to be funny. All right. Now I forgot my question. But the jury did not know about their motivation for testifying. That's the key, that the jury did not know. They did not know. Yeah. I mean, the jury wasn't really told anything about their motivation. No. And in the United States Supreme Court has also said, you know, Davis v. Alaska, the motivation of a witness's testimony, excuse me, for testifying is paramount. Okay. You answered the question. So you owe us four minutes and eight seconds. So the next time you're here, we're going to deduct. I would like to save some time for rebuttal, if I may. If there are any further questions. Let's see what happens here. Thank you. You cover a lot of ground. May it please the Court, Robert Dugdale on behalf of the United States of America. Your Honors, obviously defense counsel has made some serious allegations of misconduct against the government here, claiming that the government did not disclose benefits that it purportedly gave to witnesses, claiming that the government had witnesses on the stand and allowed them to lie about benefits that they received or didn't receive, even claiming, at the end of the day, because the prosecutor and the FBI agent who had this information and submitted declarations, as Judge Wynn noted, under penalty of perjury, that none of this was true. Defense counsel is essentially saying that they have perjured themselves, too. Now, Judge Klausner, who presided over two multi-week trials in this case, the case agent as well, who heard the testimony of the three relevant inmate witnesses, heard them testify in direct, heard them testify in cross, heard them be people like Mr. Johnson being impeached with the tapes that he made of the phone calls with his family members, Judge Klausner found none of this to be true. And as a result, as Judge Whaley correctly notes, what the defense has to show here is that Judge Klausner's factual findings on these issues were clearly erroneous. Clearly erroneous. The fact of the matter is that almost five years after the memo dispo in this case, we sit in the same exact posture as far as what the defendants can prove what happened here. And in the memo dispo, this court noted that all of these allegations were unsupported. At that time, they made the same arguments that they're making today. And I'll go through those arguments and I'll go through what they are without merit and what the defense is ignoring with regard to those arguments. But I want to make it crystal clear. What the defense is trying to prove here is an agreement that does not exist. That's why they can't show by clear and convincing evidence or under any standard that the government committed misconduct. What was their motivation for testifying? Their motivation to testify, they may have had hopes. As the government disclosed to the defense, these inmates may have had a hope that they would get a reduced sentence. Not a word was said to them by the government. A word was said. And the word was said, we are not guaranteeing anything to you for your testimony. That is what the evidence shows. That's what the declaration shows. That's what all three witnesses testified to. Again, these are witnesses who have We're not guaranteeing anything. Correct. Do you think that they had a reasonable expectation of some beneficial treatment? They testified that they were told that they were not guaranteed anything. I'm not guaranteed I'm going to be here tomorrow either. Nor am I. No, Your Honor. The point of this is that they were not promised anything either tacitly or explicitly, and they testified they couldn't rely on any promises as a result. If a promise was made No promise, but you think they were led to believe that if they testified, they testified truthfully, they might receive some benefit from that. Your Honor, again, they may have had that hope as the government disclosed. And as Mr. Johnson talked about in his phone calls, but the government did not promise them anything to that effect. And of course, the court noted in its jury instruction that the jury should look upon these witnesses with caution because they may get a benefit someday beyond even what they hoped. So there was a cautionary instruction that was given here. Did that come out that the government had disclosed? I'm looking at Mr. Umhofer, the AUSA's letter to the defense pretrial saying that the witnesses are in protective custody for their own safety. Each hopes for a sentencing reduction, but none has been promised. So that's the disclosure pretrial. We haven't promised these guys anything explicitly, but they've been around for a while. They hope to receive a sentencing benefit if they cooperate and testify against Mr. Rodriguez in this case, right? During the course of the testimony at trial, did that come out before the jury that although no explicit promises have been made, there is a hope and an expectation on the witnesses' part? Hope and or expectation, I should say. It's not necessarily the same thing. I understand. I don't think it came out as clearly as that, Your Honor. And that's because I believe what Mr. Umhofer was disclosing, his belief of what these witnesses believed, that they hoped that they would get this expectation. But these witnesses testified in varying manners about this, saying I wasn't guaranteed anything, so I'm not necessarily expecting anything. They didn't talk necessarily about what they hoped. Of course they hoped they could get out, and I think the jury would have understood that of course they would have hoped they could get out. Now, to go to the two points that the defense makes, which again are the same two points from maybe five years ago, when this court... All of these people have been around the block a few times. Of course. And that was made very clear to the jury, too. I mean, this was... I know, but I... You know, we've had, if you read the newspaper recently, Judge Kaczynski has spoken out on the abuse of Brady, huh? Of course. Yeah, and that's... There is an epidemic. Well... There is an epidemic. In light of... Why wouldn't the jury be told by the government, you know, we've... These people are testifying. We haven't promised them anything. Now, they may have hopes, but we haven't promised them a single thing. Well, that... That's not a way. Well, essentially they were told that they weren't promised anything. They were... Of course the jury understood that these people had these hopes. Defense counsel argued that. The instruction covered that issue. But what did the government... What did the government tell the jurors that let them know that these people were spoken to and told that no promises were made? Yes. The jury knew that. The jury understood that through the testimony of the witnesses who all three repeated that no promises were made. I asked you if the government told the jury that. Well, yeah, I'm not sure if this was mentioned during closing, but it was in evidence. The jury understood that no promises were made because none were made. And that's the issue. And we take this very seriously. I personally talked to this prosecutor, this now ex-prosecutor. I personally talked to the agent. I didn't want to get up, stand here, and give the court something where I didn't have some comfort that what I was telling the court was true on this point. But I think it's important to look at what the defense actually has to prove the supposed agreement that exists. And what they have is... Well, there must have been an agreement. Let me ask you one thing. Can you... It seems to me that we're trying to find the district judge did something wrong. Correct. Because he had a hearing. He made findings. So those findings are that no promise was made. If that's true, it seems to me the case would go away. Correct. What is your response to the argument that in something as serious as this and the epidemic that's been talked about, that he should have had an evidentiary hearing and that was an abuse of discretion not to do that? Well, as the court knows, he had the discretion to do that. And what he had was the facts and the records in front of him, which, again, contained nothing more than what this court had at the time that it denied the direct appeal. The two arguments that, well, they got the benefit eventually, so it must have been promised to them. Now, what's sort of shocking about that, there's a case right on point here involving this same defendant, this same appellate counsel, and one of the same witnesses. It's United in this case, he murdered a witness at another prison after he was transferred there. And the same thing happened. The prosecutor told one of the witnesses in this case, Ryan Davis, that there was no promise of a sentencing reduction. And the same claim was made. Well, there must have been a wink and a nod. There must have been an agreement you're not disclosing. And the proof of that is that Ryan Davis ultimately received a sentencing benefit. And what this court said in this published opinion, Oscar Rodriguez, is the fact that there was this post-verdict conduct by the government, it doesn't inferentially flow. Just because the government made that motion eventually doesn't mean they promised beforehand that they would make it. So that's one of the arguments. The other argument deals with Oscar Johnson and the tapes. And this goes to the point, Judge Whaley, you raised about the evidentiary hearing. But their reasonable expectations were. Reasonable, I would say hopes. I would say hopes, which was what was disclosed. Hopes, expectations, dreams, whatever it is. Correct. And look, the defense could have developed this more had they wanted to a trial. We disclosed the fact that we believe there was a hope. They could have called the case agent, for instance, who witnessed these people when they were debriefed and was with the AOSA every time. The case agent, I'm sure, could have confirmed, yes, there was a hope there. They argued that there was a hope there. There are other things that the defense could have done. But the government didn't do anything improper here. They disclosed what existed. And they didn't commit any misconduct here at the end of the day, Your Honor. None at all. A couple other quick issues. On the tape issue with Oscar Johnson, and this relates to your question, Judge Whaley, this tape came out in a trial, the trial of Mr. Rocha. Mr. Johnson was cross-examined in front of Judge Klausner about this. He gave an explanation as to why he made these tapes, that he was basically telling his family what they wanted to hear, telling his friends what he wanted them to hear, because he wanted people to save a job for him, because he didn't want his brother to move away. So all this talk about this break that he expected to get or hoped to get, he said that wasn't true. And at the end of the day, he confirmed in his cross-examination, after his cross-examination, that the government never promised him anything. So there was no promise. That's what this whole appeal is about, whether there was a promise and there was none. And that's really what this boils down to at the end of the day. One more point, because, again, you would have to really dive in to know this, but in the Ralph Rocha trial, the defense makes a big deal about the fact he was acquitted. His case was far different than the defendant's case here. Ralph Rocha was not involved in the melee where the victim in this case, Mr. Wiseman, was stabbed. The theory against Mr. Rocha was that he ordered this assault and he was off the scene and he ordered it. So he wasn't part of the melee. So the jury had to buy into the credibility of these witnesses much more than they had to buy into them in the case against this defendant. What this defendant did was on tape. The assault was on tape. Tommy Moreno stabbing him, the defendant joining the scrum, the defendant lunging at the victim, the defendant chasing the victim with Mr. Moreno until he could finally escape after being stabbed. Well, he's a bad guy. That's a given. Okay. But why did you need their testimony? Well, I think their testimony went more to count one, which was the conspiracy to commit murder to show that this wasn't just an impromptu act as the defense had alleged. So this defendant was acquitted of that count. So what the government would argue here is that the counts for which these witnesses' testimony was important, he was acquitted of those counts. The counts where the tape was important, showing him assaulting the victim, those were the counts for which he was convicted, where the testimony of all these informants was far less relevant and arguably irrelevant altogether. So they were called for that purpose. You really didn't need them. Well, needed them to prove the counts that the government aspired to prove in this even if there was error, is harmless or not. I think that's a pertinent point. That what he was convicted of was assault, simple assault, assault with a deadly weapon, and assault which resulted in serious bodily injury. All evidence that was captured on tape. Defense counsel claims there's no evidence supporting the tape. That's just plain wrong. And the jury got to see that and the jury made its decision based upon what was on that tape. So all of this at the end of the day But why did you need their testimony? You haven't answered my question. Sure, I'm sorry. I thought I had and I'll try to be more clear. The first count in the case was that there was a conspiracy to murder this witness and that there was first degree murder involved which involved some planning and plotting. So what these witnesses added one of the witnesses said, for instance, he heard Mr. Moreno and Mr. Rocha and saw Mr. Wiseman get together right before the assault happened and sort of planned this out. Ryan Davis testified. He was the jailhouse informant. He did not witness the stabbing at all, but he was selled later with the defendant and he talks about how this was part of a plot and a plan to kill this person because he had disrespected somebody within the Mexican Mafia. So their testimony really went to these charges which were not proven to the satisfaction of the jury in this case. The charges for which the defendant was convicted. And again, this defendant was convicted in this case. He got eight years, frankly the least of his problem. He's serving life for murder in a case that's been affirmed by this court. But putting all that aside, it's the counts for which he was convicted, the counts that rely upon the videotape of the incident that were important. And the witness's testimony was far less important for those counts. You really didn't need it. Well, at the end of the day, given the result, it wasn't needed. I would agree with that. I'm not sure if the Court has any additional questions. I'd be happy to answer anything, obviously. I have gone over four minutes, just like opposing counsel. Well, we'll take it out of your inventory. My next time I'll come here. I'll come back soon, Your Honor. Remind me of that. I will. Thank you, Your Honor. Thank you. I just have a couple of... You've got one minute. One minute. I just want to say that the government went out of its way to curtail trial's examination when the defense counsel in this case tried to get the informants to admit that despite the fact that there were no promises, they expected something, and the government would object and say, ask and answer, and then they would change their testimony and say, oh no, I don't expect anything. And as far as the other case, there's going to be a 2255 in that case. You can count on that. And if I have... I did address the failure to hold an evidentiary hearing specifically in my summary of argument. If I failed to say that in the conclusion, it should be implied, or you can find me ineffective, but you cannot deny relief at a minimum without an evidentiary hearing. Thank you. Thank you. Well, you went over seven seconds. Did you? Yeah. Okay. You know, yesterday we were here until about 2.30 because I let people talk a long time. Well, you don't have to come up here. Okay. When you get near a microphone, you make me nervous. Good to see you.
judges: Whaley, Pregerson, Nguyen